# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PAYPAL, INC., <br> 2211 North First Street <br> San Jose, CA 95131, <br><br> *Plaintiff*, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU, <br> 1700 G Street NW <br> Washington, DC 20552, <br><br> and <br><br> ROHIT CHOPRA, in his official capacity as Director, Consumer Financial Protection Bureau, <br> 1700 G Street NW <br> Washington, DC 20552, <br><br> *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 19-3700 (RJL) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**

At the Court's invitation, Plaintiff PayPal, Inc. respectfully submits this supplemental brief to respond to two narrow points advanced by the Consumer Financial Protection Bureau during oral argument on July 6, 2023.  In all other respects, PayPal stands on its summary judgment filings.  *See* PayPal Br., Dkt. 39-1; PayPal Opp'n, Dkt. 41.

1.  At oral argument, the Bureau claimed that, in designing the short-form disclosure mandate, the Bureau was focused on virtual GPR cards in addition to physical ones.  *See* Tr. 21:4-9 ("[T]he markets were moving to virtual …. We are talking about electronic disclosures here that covered a much broader range than just GPR cards."); *see also id.* 27:16-19 ("[E]ven GPR cards were going virtual[.]" (citing AR1 7, AR1 241-242)).  The Bureau substantially overstates the extent to which it focused on virtual GPR cards during the rulemaking.  The referenced parts of the Final Rule's preamble discussion merely note that "[s]ome" "[p]repaid products" "may exist only electronically," AR1 242, and that the "use of [such] GPR prepaid products … appears to be growing," AR1 242-243 (footnote omitted); *see also* AR1 7 (Proposed Rule) (similar).  Those record citations do not show either that GPR cards would become predominantly virtual products or that the Bureau considered the unique features of virtual products in testing or designing the short-form disclosure.  *See* Tr. 7:10-16.

Even if the Bureau's citations demonstrated meaningful consideration of the electronic nature of some GPR products, that would not undermine PayPal's core argument:  that the Prepaid Rule is tailored specifically to the unique risks and features of GPR cards—whether physical or virtual.  *See, e.g.*, PayPal Br. 7-9, 19-27; PayPal Opp'n 5-27.  As PayPal has explained (*e.g.*, PayPal Br. 7-9; PayPal Opp. 6-17), digital wallets are categorically different products from GPR cards in all material respects—including, critically, with respect to how and why consumers actually acquire and use them.  So even if many GPR cards are or will become virtual, the Bureau has failed to identify any evidence demonstrating that consumers treat the

1

products as interchangeable and actually comparison shop between these very different products.[1]

2.      The Bureau also claimed at oral argument that it chose to sweep digital wallets with balance functionality within the scope of the Rule so that providers of non-digital wallet products could not evade disclosure obligations. *See* Tr. 39:25-40:8 ("[P]art of the reason we need to do it the way we do it, is to avoid the possibility of evasion, from people calling themselves digital wallets …, to avoid disclosure obligations …."). But the Bureau made no meaningful effort to develop or defend an "anti-evasion" rationale in its briefing. With good reason: the Bureau has not identified any evidence that providers of GPR cards or other prepaid products could or would restructure their products as digital wallets to evade the Rule's GPR-card-focused requirements. That alone dooms the Bureau's late-breaking attempt to the defend the Rule, particularly given that GPR cards rest on fundamentally different business models from digital wallets, PayPal Br. 7, 8-9—making it highly doubtful that GPR card providers would transform their products into digital wallets in order to evade the Rule's requirements.

In addition, even were there reason to believe that providers of GPR cards might try to evade their obligations by restructuring their products as digital wallets, that would at most justify the adoption of disclosure requirements that are tailored to digital wallets; it does not reasonably justify the extension of a disclosure regime designed for one product (GPR cards) to a fundamentally different product (digital wallets with balance functionality).

---

[1] The Bureau's discussion of virtual GPR cards is misguided for another reason: the short-form disclosure was unquestionably designed and tested based on a paradigm of physical cards acquired at brick-and-mortar retail stores. *See, e.g.*, PayPal Br. 8,13; PayPal Opp'n 10-11. The Bureau has failed to justify applying a disclosure regime designed for those unique circumstances to digital wallets, which are entirely Internet-based.

Lastly, the Bureau has not identified any basis to believe the agency actually relied on an anti-evasion rationale during the rulemaking. At oral argument, the Bureau cited AR1 272, which nowhere discusses the risk of "people calling themselves digital wallets … to avoid disclosure obligations," Tr. 40:2-3, 6-7; indeed, it is not clear why, exactly, the Bureau believes AR1 272 is relevant. Although "evasion" is briefly mentioned at AR1 273, that word appears in the context of summarizing comments from consumer groups concerned that virtual payment systems could evade obligations under Regulation E. But PayPal is not challenging the application of Regulation E to digital wallets. *See* PayPal Opp'n 18, 20. For that reason, and also because the Bureau never reasonably articulated an anti-evasion theory during the rulemaking, the Bureau's newly minted rationale cannot sustain the Rule's application to digital wallets with balance functionality. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").

Dated:  July 28, 2023

Respectfully submitted,

/s/ *Kelly P. Dunbar*

Kelly P. Dunbar (D.C. Bar No. 500038)
Donna Farag (D.C. Bar No. 90006157)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363
kelly.dunbar@wilmerhale.com

Rebecca Lee (D.C. Bar No. 229651)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1056
Fax: (628) 235-1001
rebecca.lee@wilmerhale.com

*Counsel for Plaintiff PayPal, Inc.*